UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 NOV 25  PM 4:30

CLERK

BY_____
DEPUTY CLERK

SIDNEY KASTNER,                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Case No. 5:14-cv-141
                                          )
VANBESTCO SCANDANAVIA, AB,                )
and ICEBUG USA, INC.,                     )
                                          )
                    Defendants.           )

**OPINION AND ORDER GRANTING DEFENDANT ICEBUG USA, INC.'S
MOTION TO COMPEL ARBITRATION, GRANTING DEFENDANT
ICEBUG USA, INC.'S MOTION TO DISMISS, AND DENYING AS MOOT
DEFENDANT ICEBUG USA, INC.'S MOTION TO STAY**
(Doc. 7)

In this patent infringement lawsuit, Plaintiff Sidney Kastner, who sometimes does
business under the name Tracktion Canada, Inc., ("Tracktion") alleges that Defendants
Vanbestco Scandanavia, AB, ("Vanbestco") and Icebug USA, Inc., ("Icebug USA") have
infringed U.S. Patent Nos. 5,634,283 and 6,915,595 owned by Plaintiff (the "patents in
suit"). Plaintiff further alleges that Vanbestco has wrongfully repudiated a licensing
agreement (the "License Agreement") regarding the patents in suit which includes an
agreement to arbitrate certain disputes.

Pending before the court is Icebug USA's motions to compel arbitration and
dismiss Plaintiff's case, or, in the alternative, to stay the case pending arbitration. (Doc.
7.) Icebug USA contends that the License Agreement granting Vanbestco a license to
use the patents in suit requires arbitration of Plaintiff's pending claims. Plaintiff opposes
the motion to compel, arguing that the License Agreement does not apply to Vanbestco's
subsidiary, Icebug USA, who was not a signatory to that agreement, and that Plaintiff can
therefore maintain a patent infringement action against Icebug USA. Plaintiff further

contends that neither Vanbestco nor Icebug USA can seek to enforce the License Agreement because Vanbestco repudiated it.

The parties waived oral argument. Plaintiff is represented by Brice C. Simon, Esq. Defendants are represented by Lisa B. Shelkrot, Esq. and Philip Buri, Esq.

I.    **Factual and Procedural Background.**

A.    **Plaintiff's Complaint.**

U.S. Patent No. 5,634,283, entitled "Resilient, All Surface Sole," was issued on June 3, 1997, and U.S. Patent No. 6,915,595, entitled "Resilient, All-Surface Soles for Footwear," was issued on July 12, 2005, as an improvement to U.S. Patent No. 5,634,283. According to the Complaint, the patents in suit disclose and claim "footwear having metal studs such that, when the footwear is worn, retract under pressure from the weight of the wearer until the tips of the studs are substantially at the plane of the bottom surface of the footwear." (Doc. 1 at 2, ¶ 8.) The Complaint alleges that the patents in suit remain in full force and effect.

According to the Complaint, Vanbestco is a Swedish corporation that sometimes does business in the United States as Icebug USA. The Complaint alleges that Vanbestco and Icebug USA have infringed and continue to infringe the patents in suit by Defendants' "sale, offering for sale, use and importation . . . of shoes that incorporate footwear having metal studs and other structures as disclosed and claimed in both of the patents in suit." *Id.* at 2, ¶ 10. The Complaint further alleges that such infringement is "willful and deliberate because Vanbestco, as a former licensee under the patents in suit, and Icebug, [whose agent] was involved with negotiating the license, [are] well aware of [Plaintiff's] patents and their applicability to the products that Vanbestco and Icebug markets and sells." *Id.* Plaintiff has served Icebug USA with the Complaint. Plaintiff has not yet served Vanbestco, now known as Icebug, AB.

B.    **Icebug USA's Pending Motion.**

In support of the pending motion, Icebug USA represents that Vanbestco is a Swedish footwear company that designs, develops, and distributes insoles and shoes with

2

traction for icy and slippery conditions, that Vanbestco changed its name to Icebug, AB, in 2009, and that Icebug USA is its United States subsidiary.

Effective January 1, 2007, Tracktion (the "Licensor") and Vanbestco (the "Licensee") entered into a ten-year License Agreement that allows the Licensee to manufacture, import, use, or sell any "Licensed Products" that utilize the patents in suit.[1] In exchange, the Licensor receives royalties for products manufactured, imported, used, or sold that "in the absence of th[e] License Agreement would infringe" the patents listed in that Agreement. (Doc. 7-2 at 2, Article I.)  While the Agreement "is assignable by [the] Licensor without the prior written consent" of the Licensee, the Licensee may assign its rights and obligations only by written notice, "provided that no objection is made by [the] Licensor." (Doc. 7-2 at 6, Article IX.)  The License Agreement states that Tracktion is "a corporation formed under the laws of Canada and having a principal place of business" in Quebec and that Vanbestco has offices in Sweden. (Doc. 7-2 at 1.)

Both the Licensor and Licensee reserve the right to unilaterally terminate the Agreement "at any time for any reason without penalty . . . upon two (2) years prior written notice to the other party, in which case th[e] License Agreement shall terminate at the end of the quarter two years from the date on which such notice is given." (Doc. 7-2 at 2-3, Article III.)  In the event of a dispute, the License Agreement provides as follows:

> In case of a disagreement Licensor and Licensee will use their best efforts to settle differences of opinion regarding this Agreement and the interpretation and validity thereof.  However, any dispute arising out of or in connection with the present Final Agreement shall be finally settled in accordance with rules of conciliation and arbitration of the International [C]hamber of Commerce, by one or more Arbitrators [designated] in accordance with said rules.  The arbitration proceedings shall be governed by the laws of Canada and shall take place in Montreal, Canada.

---

[1] Exhibit A to the License Agreement lists U.S. Patent No. 5,634,283, issued June 3, 1997; U.S. Patent No. 6,915,595, issued July 12, 1005 (presumably 2005); Canada Patent No. 2,193,437, issued October 19, 1999; and Chinese Patent No. CN 1253117, issued April 12, 2006, as held by Sidney Kastner.  Exhibit A further lists the following applications: European Patent Application Serial No. 02256220.4, filed September 3, 2002; Japanese Patent Application Serial No. 2002-264575, filed September 10, 2002; and Russian Patent Application Serial No. 2002123915, filed September 9, 2002.

(Doc. 7-2 at 6-7, Article X.)  Icebug USA represents that the License Agreement was "proposed, written and drafted" by Plaintiff.  (Doc. 7-1 at 1, ¶ 5.)

On April 11, 2012, Plaintiff executed an "Addition to License Agreement" that provided:

> Sid Kastner as the principal and only shareholder of Tracktion Canada Inc hereby authorizes Icebug AB (formerly known as Vanbestco Scandivavia AB) to change the payee name from Tracktion Canada Inc to Tracktion Sid Kastner, for all payments concerning present and future royalty payments concerning the License Agreement between the two parties, made, entered into and effective as of first day of January 2007.
>
> All other conditions between the two parties remain unchanged.
>
> Sid Kastner is the only signing officer for Tracktion Canada Inc.

(Doc. 7-3 at 1.)  The document was signed "Sid Kastner, Tracktion Canada Inc." *Id.*

Thereafter, Vanbestco allegedly discovered a "very substantial infringement" in two "major markets," Finland and Norway.  (Doc. 7-1 at 2, ¶ 8.)  Vanbestco contacted Plaintiff who informed Vanbestco that he had not designated those countries in the European patent.  Because there was allegedly no patent protection in Finland and Norway, Vanbestco contends "that it had paid royalties for territories where it believed no royalties were due." *Id.*  Concluding that it overpaid Plaintiff by $246,818, Vanbestco allegedly informed Plaintiff that it would credit the overpayment against future royalties, less the fixed minimum royalty payment for 2013.  Vanbestco also allegedly attempted to speak with Plaintiff about the scope of the patents in suit in light of a prior decision of this court in *Chet's Shoes, Inc. v. Kastner*, 710 F. Supp. 2d 436 (D. Vt. 2010), *aff'd*, 449 F. App'x 37 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 1573 (2012), in which the court examined the language of the patents in suit, interpreted the meaning of the claims, and rejected Plaintiff's allegations of patent infringement against a Minnesota corporation. Vanbestco claims that it received no satisfactory response from Plaintiff after its attempts to resolve these issues and that Plaintiff responded by terminating the License Agreement for cause on the grounds that Vanbestco had repudiated it.  Vanbestco denies that its

4

conduct amounted to repudiation and asserts that it notified Plaintiff at that time that it was invoking the License Agreement's two-year termination provision.

On July 2, 2014, Plaintiff filed the pending action alleging patent infringement against Defendants. After counsel for both Defendants attempted to gain Plaintiff's consent to arbitrate the dispute, to which Plaintiff did not respond, Icebug USA filed the pending motion to compel arbitration on August 14, 2014. Vanbestco does not join this motion, but has filed an independent request for arbitration with the International Chamber of Commerce's International Court of Arbitration. Plaintiff opposes Icebug USA's pending motion to compel, arguing that the arbitration provision in the License Agreement does not include his patent infringement claims in this action.

## II.   Conclusions of Law and Analysis.

### A.   Whether the License Agreement Is Governed By and Enforceable Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (internal quotation marks omitted). Pursuant to 9 U.S.C. § 2, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA therefore "supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349, 352 (2008).

The FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), 9 U.S.C. §§ 201-208, and provides that the Convention "shall be enforced in United States courts," which have original jurisdiction over any "action or proceeding" falling under the Convention, regardless of the amount in controversy. 9 U.S.C. §§ 201, 203. "An arbitration

agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in [9 U.S.C. § 2], falls under the Convention." 9 U.S.C. § 202. Pursuant to 9 U.S.C. § 2, the Convention also applies to a "written provision" in any contract

> evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal[.]

9 U.S.C. § 2. However, an agreement "arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention," unless certain listed exceptions apply. 9 U.S.C. § 202. The FAA defines a corporation as a citizen of the United States "if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202. Because the License Agreement in this case is between two corporations which are not citizens of the United States, the arbitration agreement contained therein does not "aris[e] out of such a relationship which is entirely between citizens of the United States." 9 U.S.C. § 202.

"The Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). In this case, Tracktion and Vanbestco agreed in writing to settle "any dispute arising out of or in connection with" the License Agreement "in accordance with rules of conciliation and arbitration of the International [C]hamber of Commerce." (Doc. 7-2 at 7, Article X.) There is thus a written agreement to arbitrate between Tracktion and Vanbestco. The License Agreement provides that arbitration "shall take place in Montreal, Canada." (Doc. 7-2 at 7, Article X.) Canada is a signatory to the Convention. The agreement thus provides for arbitration in a territory of a signatory to the Convention. The written agreement allows

Vanbestco to manufacture, import, use, or sell products that would otherwise infringe the patents listed in the License Agreement, which includes the patents in suit. It is thus commercial in nature, and its subject matter is international, rather than solely domestic. As a result, the "four basic requirements" under Second Circuit precedent "for enforcement of arbitration agreements under the Convention" are satisfied in this case. *Smith/Enron Cogeneration Ltd. P'ship, Inc.*, 198 F.3d at 92. The License Agreement is therefore enforceable.

## B.   Whether the License Agreement Requires Arbitration of Plaintiff's Claims.

"Only after ensuring that a valid arbitration agreement exists may [the court] proceed to determine whether that agreement requires the arbitration of [the parties'] claims." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011). "[W]hether the dispute is to be arbitrated—the so called 'question of arbitrability'"—is generally reserved for the court, rather than the arbitrator, to decide. *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013). However, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

In this case, the License Agreement provides that any dispute "shall be finally settled in accordance with rules of conciliation and arbitration of the International [C]hamber of Commerce, by one or more Arbitrators [designated] in accordance with said rules." (Doc. 7-2 at 7, Article X.) Article Six of the Arbitration and Mediation Rules of the International Chamber of Commerce (the "ICC") provides:

> If any party against which a claim has been made does not submit an Answer, or raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall

be decided directly by the arbitral tribunal, unless the Secretary General
refers the matter to the Court for its decision pursuant to Article 6(4).

(Doc. 7-8 at 16, Article 6(3).)  For a case referred to the ICC's arbitral body, the
International Court of Arbitration (the "ICA"), Article 6(4) provides that the ICA
(referred to as "Court" in the ICC's Rules) "shall decide whether and to what extent the
arbitration shall proceed":

> The arbitration shall proceed if and to the extent that the Court is
> *prima facie* satisfied that an arbitration agreement under the Rules may
> exist.  In particular: (i) where there are more than two parties to the
> arbitration, the arbitration shall proceed between those of the parties,
> including any additional parties joined pursuant to Article 7, with respect to
> which the Court is *prima facie* satisfied that an arbitration agreement under
> the Rules that binds them all may exist[.]

(Doc. 7-8 at 17, Article 6(4).)

The Second Circuit has addressed whether "parties who contracted for arbitration
in accordance with ICC rules had thereby agreed to submit questions of arbitrability to
the arbitrator." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir.
2003); *accord Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-73 (1st Cir. 1989)
(concluding agreement that all disputes would be settled "in accordance with the rules of
arbitration of the International Chamber of Commerce," which "delegates to the arbitrator
decisions about the arbitrability of disputes involving the existence and validity of a
*prima facie* agreement to arbitrate," required submission of "issues of arbitrability to the
arbitrator") (internal quotation marks omitted).  In *Shaw*, the Second Circuit concluded
that "the parties' intent to arbitrate arbitrability [was] further evidenced by their
agreement to refer all disputes to the International Chamber of Commerce," which, in
Article Six, "specifically provides for the ICA, the arbitral body of the ICC, to address
questions of arbitrability, either *sua sponte* before an answer is filed or at the specific
request of any party." *Shaw Grp. Inc.*, 322 F.3d at 122.  Thus, "an arbitration clause
subjecting disputes to the rules and procedures of the ICC International Court of

Arbitration clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes." *VRG Linhas Aereas S.A.*, 717 F.3d at 326.

Because the Agreement in this case requires disputes to be settled in accordance with the rules of the ICC, and because those rules provide that the question of arbitrability is for its arbitral body to decide, the issue of the arbitrability of Plaintiff's claim is committed to arbitration. Plaintiff's challenge to the arbitrability of his patent infringement claim must therefore await arbitration.[2]

### C.      Whether Repudiation Nullifies the License Agreement.

Plaintiff contends that Vanbestco repudiated the License Agreement, which allegedly gave him "the right to treat the contract as terminated *for all purposes* of performance" and to pursue his patent infringement claim without resort to arbitration. (Doc. 15 at 4.) Plaintiff "cites no authority for the proposition that the opposing party's breach of contract negates an agreement to arbitrate; nor would such an approach be reasonable as it would presumably arise in every breach of contract case." *Abbott v.*

---

[2] Were the court to decide the question of arbitrability in the first instance, it would be compelled to find that Plaintiff's patent infringement claim is within the scope of Article X of the License Agreement. The "tone" of the Agreement "as a whole" indicates that it is a "broad" clause. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983). The use of the phrase "arising out of" does not otherwise indicate a narrow clause as there are no words of "further limitation." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225-26 (2d Cir. 2001). Indeed, the License Agreement applies to "any dispute arising out of or in connection with" the Agreement, (Doc. 7-2 at 7, Article X), which is analogous to a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement'" and which "is the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (alterations in original); *see also Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331, 335 (D. Vt. 2001) ("There can be no question that the arbitration clause at issue here, which mandates arbitration of 'any dispute or controversy between the parties arising out of or relating to [the Software License Agreement]' which cannot be resolved by good faith negotiations, is the paradigm of a broad arbitration clause.") (internal citation omitted). The Arbitration Clause, as a broad clause, is entitled to "a presumption of arbitrability" reflecting that the parties "intend[ed] all issues that touch matters within the main agreement to be arbitrated." *Louis Dreyfus Negoce*, 252 F.3d at 225 (internal quotation marks and citations omitted). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

*Keen, Inc.*, No. 5:13-cv-267, slip op. at 9 n.3 (D. Vt. May 7, 2014). Moreover, the rules of the ICC, which the parties agreed would govern, provide:

> [T]he arbitral tribunal shall not cease to have jurisdiction by reason of any allegation that the contract is non-existent or null and void, provided that the arbitral tribunal upholds the validity of the arbitration agreement. The arbitral tribunal shall continue to have jurisdiction to determine the parties' respective rights and to decide their claims and pleas even though the contract itself may be non-existent or null and void.

(Doc. 7-8 at 18, Article 6(9).) Accordingly, whether Vanbestco or Plaintiff repudiated the License Agreement does not impact its enforceability, and the parties remain bound to arbitrate disputes arising out of or in connection with it.

### D.     Whether Icebug USA May Compel Arbitration.

Finally, Plaintiff maintains that he should be allowed to pursue a patent infringement case against Icebug USA because Icebug USA was not a party to, and is not an assignee of, the License Agreement. Because "arbitration is a matter of contract," "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). A district court is "required to determine" based on general principles of domestic law "whether a party has consented to arbitrate." *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005); *accord Smith/Enron Cogeneration Ltd. P'ship, Inc.*, 198 F.3d at 95 ("In considering whether a particular dispute is arbitrable, a court must first decide whether the parties agreed to arbitrate.") (internal quotation marks omitted). The "customary implementation of an agreement to arbitrate" is a party's signature to the agreement. *Sarhank Grp.*, 404 F.3d at 662.

In this case, although Icebug USA did not sign the License Agreement, it has "consented to arbitrate" by seeking arbitration in the pending case. *Id.* at 661. The Second Circuit has recognized that a defendant who was not a party to the original arbitration agreement has "created a separate binding agreement to arbitrate" the dispute "by consenting to arbitration." *Republic of Ecuador*, 638 F.3d at 392. Moreover, the Second Circuit has "repeatedly found that non-signatories to an arbitration agreement

may nevertheless be bound according to ordinary principles of contract and agency," which include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Smith/Enron Cogeneration Ltd. P'ship, Inc.*, 198 F.3d at 97 (internal quotation marks omitted); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-80 (2d Cir. 1995) (outlining application of contract and agency principles in relation to arbitration disputes). These same principles apply "when a signatory to an arbitration agreement seeks to bind a non-signatory to it," or "when a non-signatory seeks to compel arbitration with a signatory." *Smith/Enron Cogeneration Ltd. P'ship, Inc.*, 198 F.3d at 97-98. Here, Icebug USA, a non-signatory to the License Agreement, seeks to compel arbitration with Plaintiff, who owns Tracktion, a signatory to the License Agreement.

A non-signatory "seeking to compel a signatory to arbitrate a dispute" can do so through "the principle of equitable estoppel, which requires a two-part inquiry." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 648 (S.D.N.Y. 2011). First, "'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them [must demonstrate] that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). Second, "'there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Ragone*, 595 F.3d at 127 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir. 2008)).

In this case, the issues that Icebug USA seeks to arbitrate and that Plaintiff seeks to litigate are intertwined with the License Agreement. Plaintiff alleges patent infringement of patents subject to the License Agreement. Vanbestco, in turn, alleges that it has been paying royalties for patent protection that appeared to be offered by the License Agreement, but which did not exist in two key markets. The parties further

dispute whether the License Agreement remains in effect and, if so, what, if any, royalties are due. Because the parties' disputes arise directly out of and are closely related to the License Agreement, Plaintiff "should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Ragone*, 595 F.3d at 127 (internal quotation marks omitted). Because Plaintiff, "as signatory, is estopped from avoiding arbitration with a non-signatory," Icebug USA, which has consented to arbitration, can compel arbitration. *Choctaw Generation Ltd. P'ship*, 271 F.3d at 404.

## CONCLUSION

For the foregoing reasons, the court finds that the License Agreement falls within the scope of, and is enforceable under, the Convention pursuant to 9 U.S.C. §§ 201-203. When "the parties formed an 'agreement in writing' within the meaning" of the Convention, then 9 U.S.C. § 201 "requires" courts "to enforce the parties' agreement according to its terms," *Republic of Ecuador*, 638 F.3d at 393, and the court must order "that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The court therefore GRANTS Icebug USA's motion to compel arbitration with regard to Plaintiff's patent infringement claims, and ORDERS arbitration in accordance with the License Agreement.

Because dismissal is appropriate if "every claim has been submitted to arbitration" and because the sole cause of action in Plaintiff's Complaint has been submitted to arbitration, the court further GRANTS Icebug USA's motion to dismiss the case, and DENIES AS MOOT Icebug USA's alternative motion for a stay pending arbitration. *French v. Wells Fargo Advisors, LLC*, 2012 WL 479961, at *5 (D. Vt. Feb. 14, 2012) (citing *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997) ("As all of the plaintiff's claims must be submitted to arbitration, no useful purpose will be served by granting a stay of these proceedings. Final judgment is hereby entered dismissing this action and directing the parties to proceed to arbitration.")). The dismissal is WITHOUT PREJUDICE.

SO ORDERED.

   Dated at Burlington, in the District of Vermont, this $\underline{25}$ day of November, 2014.

                                      Christina Reiss, Chief Judge
                                      United States District Court